IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| J. KEVIN BIRD,<br><br>                         Appellant,<br><br>v.<br><br>STEVEN R. HART and AMY S. HART,<br><br>                         Appellees. | **MEMORANDUM OPINION**<br><br>Case No. 2:19-cv-54-JNP<br><br>District Judge Jill N. Parrish |

This case arises from the bankruptcy of Appellees and Debtors Steven R. Hart and Amy S. Hart ("the Harts"). Appellant J. Kevin Bird ("the Trustee" or "Mr. Bird") appeals the bankruptcy court's decision that Mr. Bird, acting as trustee of the Harts' bankruptcy estate, abandoned KCK Holdings, LLC, ("KCK Holdings") at the close of the Harts' bankruptcy proceedings in 2011. For the reasons discussed below, the decision of the bankruptcy court is AFFIRMED.

## BACKGROUND

On March 31, 2011, the Harts filed a Chapter 7 Voluntary Petition, commencing bankruptcy proceedings in the District of Utah. In June of 2011, after inquiring into the Harts' financial affairs and the property belonging to the estate, the Trustee filed a Report of No Distribution. The following month, the debtors were discharged and the bankruptcy proceedings were closed.

Almost four years later, in May of 2015, the Trustee moved to reopen the case. The Trustee alleged that, after an investigation based upon tips received from an anonymous letter, he had discovered possible omissions and misrepresentations in the Harts' Statement of Financial Affairs ("SOFA"). The alleged misrepresentations related to Property Management Incorporated

Franchise, LLC, PMI MM Inc., and PMI Investments, LLC (collectively, "PMI"), a group of entities referred to as "Property Management, Inc." by the Harts. In their filings, the Harts had disclosed that they held a 49% ownership interest in PMI and that PMI had no value. The Harts did not object to the reopening of the case, but did contest the allegation that they had misrepresented PMI's value.

After reopening the case, the focus of the Trustee's investigation shifted away from PMI and toward KCK Holdings. The Harts, despite disclosing a 49% ownership interest in PMI during the initial bankruptcy proceedings, did not actually directly hold any ownership interest in that entity. Rather, KCK Holdings, of which Amy Hart holds a 90% ownership interest and Steven Hart holds the remaining 10% ownership interest, held that 49% ownership interest in PMI. Thus, the Harts' interest in PMI exists solely through their ownership of KCK Holdings.

The Trustee adopted the position that the Harts' interest in KCK Holdings had never been properly scheduled during the original bankruptcy proceedings. Thus, he argued that the Harts' interest in KCK Holdings was not technically abandoned pursuant to Section 554(c) of the Bankruptcy Code (the "Code"). 11 U.S.C. § 554(c).

In December of 2018, the Harts filed a Motion to Abandon Membership Interests in KCK Holdings, LLC, arguing that their ownership interest in the entity had been technically abandoned at the close of the proceedings seven and a half years earlier. The bankruptcy court granted that motion, concluding that the Harts had scheduled their interest in KCK Holdings as is required under Section 554(c) of the Code. The Trustee appeals that order.

## ANALYSIS

The Trustee challenges two of the bankruptcy court's conclusions. First, he argues that the bankruptcy court incorrectly interpreted Section 554(c) of the Code to allow for the "scheduling"

of an asset in any filing made under Section 521(a). Second, the Trustee contests the bankruptcy court's conclusion that the Harts sufficiently scheduled their interest in KCK Holdings.

## I.    The Bankruptcy Court Correctly Interpreted Section 554(c)

Section 554(c) of the Code provides that, unless the court orders otherwise, "any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor." 11 U.S.C. § 554(c). The parties dispute the proper interpretation of this section, which is a question of law. *See In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018). Questions of law are reviewed de novo. *In re Commercial Fin. Servs., Inc.*, 427 F.3d 804, 810 (10th Cir. 2005).

The bankruptcy court in this case interpreted Section 554(c) to allow for the technical abandonment of property scheduled under any of the subsections of Section 521(a)(1). Mr. Bird contends that this was an incorrect interpretation of the law and that "scheduled under Section 521(a)(1)" refers specifically to the schedule of assets and liabilities that debtors are required to file under Section 521(a)(1)(B)(i).

The Tenth Circuit has not spoken directly on this issue and other courts are divided on the proper interpretation of Section 554(c). Some apply the narrow reading suggested by Mr. Bird, interpreting "scheduled" to mean scheduled only under Section 521(a)(1)(B)(i). *See In re Fossey*, 119 B.R. 268, 272 (D. Utah 1990); *In re McCoy,* 139 B.R. 430, 432 (Bankr. S.D. Ohio 1991); *In re Schmid*, 54 B.R. 78, 80 (Bankr. D. Or. 1985). Other courts have interpreted Section 554(c) more broadly to mean Section 521(a)(1) in its entirety. *See United States ex rel. Fortenberry v. Holloway Grp., Inc.*, 515 B.R. 827, 829 (W.D. Okla. 2014); *In re Krachun*, 2015 WL 4910241, at *6 (Bankr. D. Utah Aug. 14, 2015); *In re Hill*, 195 B.R. 147, 150 (Bankr. D.N.M. 1996). This court adopts

the broader reading of Section 554(c) and concludes that the bankruptcy court's interpretation of the statute was correct.

A.     The Proper Interpretation of Section 554(c)

"[I]nterpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *In re Woods*, 743 F.3d 689, 694 (10th Cir. 2014) (alteration in original) (quoting *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011)). Thus, the court must look first to the plain language of the statute. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

On its face, Section 554(c) provides that an asset must be "scheduled under section 521(a)(1)" in order to be technically abandoned. Section 521(a)(1) requires that debtors file an array of documents, including a schedule of assets and liabilities, a schedule of current income and current expenditures, a statement of financial affairs ("SOFA"), and a statement of monthly net income. 11 U.S.C. § 521(a)(1). But Mr. Bird argues that the language of Section 554(c) refers only to the document required under Section 521(a)(1)(B)(i), the schedule of assets and liabilities.

Had Congress intended the narrower reading of the statute, it could have drafted Section 554(c) to specify that the scheduling must occur under Section 521(a)(1)(B)(i) in particular. Congress did not, however, limit the applicability of Section 554(c) only to assets scheduled under that subsection. Instead, it identified a broader set of documents, drafting the statute to reference Section 521(a)(1) as a whole. Thus, Section 554(c) on its face allows for the scheduling of assets in any of the filings listed under Section 521(a)(1).[1] The bankruptcy court's conclusion of law was correct.

---

[1] The Trustee argues that this interpretation of Section 554(c) creates a slippery slope problem. He suggests that, taken to its extreme, it allows debtors to scatter references to their assets across their Section 521(a)(1) filings and later claim that those assets have been technically abandoned. A similar argument cuts against the Trustee's position, however. Taken to its extreme, the narrow interpretation creates the possibility that a placement or typographical error on a debtor's schedule of assets and liabilities could bar the debtor from benefiting from technical abandonment because

B.      Policy Considerations Explain Some Courts' Narrow Reading of Section 554(c)

The plain language of Section 554(c) includes filings under all of Section 521(a)(1). As has been addressed above, however, some courts read the statute to mean Section 521(a)(1)(B)(i). To understand why some courts adopt this narrower reading despite the statutory language, this court finds persuasive the Ninth Circuit Bankruptcy Appellate Panel's opinion in *In re Tadayon*, 2019 WL 1923044, (B.A.P. 9th Cir. Apr. 29, 2019). The appellate panel in that case adopted the plain language interpretation of the Section 554(c), but acknowledged that the Ninth Circuit Bankruptcy Appellate Panel had departed from the language in other cases. *Id.* at *6. It suggested, however, that cases in which the statute is read narrowly typically involve "a compelling fact situation, which, in equity, presses for a decision *against* allowance of an implied abandonment." *Id.* (quoting *In re Hill*, 195 B.R. at 150).

Technical abandonment under Section 554(c) requires an "intelligent decision by the trustee which can be made only on the basis of 'all reasonably available information.'" *In re Krachun*, 2015 WL 4910241, at *4 (quoting *In re Hill*, 195 B.R. at 150). Courts applying Section 554(c) have broadly noted the importance of ensuring that the debtor fulfills his role in good faith, noting that the operation of the bankruptcy system depends on honest reporting. *See In re Furlong*, 660 F.3d 81, 87 (1st Cir. 2011); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008); *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985).

The Bankruptcy Appellate Panel's position in *In re Tadayon* suggests that courts sometimes read Section 554(c) narrowly in order to ensure that debtors failing to act in good faith do not benefit from technical abandonment. Upon review of the wide range of cases addressing

---

the asset was not perfectly scheduled. The court is therefore unpersuaded by the Trustee's policy argument.

the interpretation of Section 554(c), this court finds compelling the Ninth Circuit Bankruptcy

Appellate Panel's explanation for some courts' departure from the statutory language.[2]

The court is unable to identify any facts in this case that warrant departure from the plain

language of Section 554(c).[3] The Harts had a duty to disclose, as all bankruptcy debtors do. And,

as will be addressed in further detail below, the Harts fulfilled their obligations over the course of

the bankruptcy proceedings, repeatedly disclosing their interest in KCK Holdings in their Section

521(a)(1) filings.

## II.     The Harts Sufficiently Disclosed Their Ownership Interest in KCK Holdings

Having concluded that the bankruptcy court properly interpreted Section 554(c), the court

must determine whether the Harts' disclosures were sufficient to have "scheduled" their interest

in KCK Holdings. A debtor in a bankruptcy proceeding has an obligation to disclose all of his

assets. *In re Brumfiel*, 2015 WL 5895213, at *4 (B.A.P. 10th Cir. Oct. 8, 2015). As the bankruptcy

court in this case noted, however, the requirements for technical abandonment are intended to

ensure that those disclosures allow the trustee to "efficiently [ ] identify and investigate a potential

asset of the estate." *In re Krachun*, 2015 WL 4910241, at *4 (alteration in original) (quoting *In re

Hill*, 195 B.R. at 150).

---

[2] The court acknowledges Mr. Bird's argument that the narrow reading of Section 554(c) constitutes the majority view in American bankruptcy law. It also acknowledges that a court in this district has once before adopted the narrow interpretation. *In re Fossey*, 119 B.R. 268 (D. Utah 1990). Though the relative popularity of an interpretation does not alter the plain text of a statute, it does appear that courts have historically been more hesitant to adopt the broader interpretation of Section 554(c). The court notes, however, that the trend among courts and bankruptcy appellate panels in recent years has been toward adopting this plain language reading of the statute. *See e.g. In re Furlong*, 660 F.3d 81 (1st Cir. 2011); *In re Tadayon*, 2019 WL 1923044, (B.A.P. 9th Cir. Apr. 29, 2019); *United States ex rel. Fortenberry v. Holloway Grp., Inc.*, 515 B.R. 827 (W.D. Okla. 2014); *In re Krachun*, 2015 WL 4910241, (Bankr. D. Utah Aug. 14, 2015).

[3] Mr. Bird suggests that the Harts misled him during the Section 341 meeting of the creditors. The court has reviewed the transcript from that meeting and is unable to conclude that this is an accurate characterization of the parties' discussion.

The court must therefore determine whether the Harts disclosed their assets in a manner that allowed the Trustee to fulfill his duty to investigate the assets of the estate. *In re Furlong*, 660 at 87 (noting that investigation is a part of the trustee's duties and that the debtor's obligation is to do enough to enable the trustee to determine whether to investigate further); *In re Tadayon*, 2019 WL 1923044, at *6–7 (holding that debtor's disclosure of a state court action in the SOFA, as well as discussion of the action at the meeting of the creditors, was sufficient for technical abandonment because the record demonstrated that the trustee knew about and intended to abandon the asset).

The first aspect of this inquiry, how KCK Holdings was identified in the Harts' Section 521(a)(1) filings, although not in dispute, is a finding of fact subject to the clearly erroneous standard. *In re Bonner*, 330 B.R. 880, at *1 (B.A.P. 6th Cir. Sept. 6, 2005) (unpublished table opinion). The next aspect, whether those disclosures were sufficient to meet the requirements for technical abandonment under Section 554(c), is a question of law to be reviewed de novo. *In re Tadayon*, 2019 WL 1923044, at *4 (citing *In re Bonner*, 330 B.R. 880). In this case, as the bankruptcy court found, the Harts disclosed KCK Holdings repeatedly, across multiple documents filed under Section 521(a)(1). These disclosures, taken together, were sufficient to notify the Trustee of the identity of KCK Holdings and to allow for further investigation.

A.  The Trustee's Knowledge of KCK Holdings

The court notes first that the parties discussed the Harts' interest in KCK Holdings at the Section 341 meeting of creditors. Though knowledge of an asset is an essential element of technical abandonment, a trustee's awareness of the asset alone is insufficient. *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991). The language of Section 554(c) does not provide that the debtors may "schedule" an asset in any manner that brings the trustee's attention to the existence of that asset, such as orally disclosing it at a meeting. Rather, it expressly requires scheduling under Section 521(a)(1).

The Harts' discussion of KCK Holdings with the Trustee was therefore not alone sufficient to "schedule" the Harts' ownership interest in KCK Holdings. The relevant focus of the court's inquiry is on the Trustee's notice and capacity to investigate KCK Holdings based specifically on what was scheduled under Section 521(a)(1).

B.      The Harts' Section 521(a)(1) Filings

The Harts disclosed their interest in KCK Holdings in multiple documents filed pursuant to Section 521(a)(1). First, they listed KCK Holdings on their SOFA under Question 18, which requires that the debtor list information about any business entities that they had managed or of which they owned at least five percent within the six years before commencement of the bankruptcy case. That disclosure noted that KCK Holdings was still in existence at the time of the debtors' filing for bankruptcy. Further, the Harts listed their own home address as the address of KCK Holdings. Thus, the disclosures on their SOFA suggested current ownership of KCK Holdings.

In addition, the Harts filed a six-month profit and loss statement for KCK Holdings to fulfill their obligations under Section 521(a)(1)(B)(iv), which requires that the debtors provide evidence of payment received in the sixty days before commencement of the bankruptcy proceedings. 11 U.S.C. § 521(a)(1)(B)(iv). The court finds implausible the Trustee's argument that, upon receiving a company's profit and loss statement from the debtors as evidence of payments they had received, he would not have been on notice as to the debtors' likely ownership of that company.

Further, the Harts disclosed a 49% ownership interest in PMI on their personal property schedule when, in fact, that ownership interest was held by KCK Holdings. Partially scheduled assets can be abandoned by operation of Section 554(c), so long as the partial scheduling is sufficient to enable the trustee to determine whether he ought to investigate further. *In re Furlong*,

660 F.3d at 87–88 (holding that debtors sufficiently scheduled business tort and state law consumer protection causes of action when they listed a breach of contract claim on their personal property schedule because all three causes of action often arose out of the same set of facts). Had the Trustee made any effort to investigate PMI based on the personal property schedule, the Trustee would have discovered that the Harts' 49% ownership interest in PMI was held through KCK Holdings. In addition, the record suggests that PMI was the primary asset held by KCK Holdings at the time of the Harts' bankruptcy.[4] Thus, the Harts' disclosure of PMI on their personal property schedule was a functional disclosure of their interest in KCK Holdings.

Finally, the Harts' disclosures in their current income schedule and statement of current monthly income and means-test calculation put Mr. Bird on notice regarding the Harts' ownership interest in KCK Holdings. As has been addressed, the Harts disclosed a 49% ownership interest in PMI on their personal property schedule. On their current income schedule, the Harts disclosed that Steven Hart's monthly income was $207.47 and that PMI was the source of that income. On their statement of current monthly income and means-test calculation, the debtors disclosed that Steven Hart's current monthly income was that same amount, $207.47, but instead indicated that KCK Holdings was the source of that income.

The Harts referenced both PMI and KCK Holdings interchangeably as the source of Steven Hart's monthly income. These disclosures would have made clear to the Trustee a possible relationship between the two companies, thus warranting further investigation of PMI. As has been discussed, any such investigation by the Trustee would have revealed the Harts' ownership interest in KCK Holdings.

---

[4] At oral argument, the Trustee did not dispute the assertion the PMI was the sole asset held by KCK Holdings at the time of the Harts' bankruptcy.

C.      The Harts' Disclosures Were Sufficient

Taken together, the Harts' various Section 521(a)(1) filings provided Mr. Bird with enough information to identify and investigate KCK Holdings.[5] As a result of the Harts' Section 521(a)(1) filings, Mr. Bird had the capacity to investigate KCK Holdings and either decided not to do so or did so and decided that KCK Holdings lacked any value. In any case, the disclosures made by the Harts in their Section 521(a)(1) filings were sufficient to "schedule" KCK Holdings as is required for technical abandonment.

**ORDER**

For the reasons articulated, the order of the bankruptcy court is hereby **AFFIRMED**.

Signed May 19, 2020

                                        BY THE COURT


                                        _____
                                        Jill N. Parrish
                                        United States District Court Judge

---

[5] In fact, it is evident from Mr. Bird's own briefing that the Section 521(a)(1) brought his attention to the Harts' interest in KCK Holdings. Mr. Bird notes that the SOFA led him to seek more information from the Harts at the Section 341 meeting of creditors. The parties dispute the sufficiency of the Harts' disclosures at this meeting, but the fact remains that the Section 521(a)(1) filings put Mr. Bird on notice and enabled him to investigate KCK Holdings if he so chose.